CJF3.15.19



FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2019 MAY 21   PM 1: 58

CLERK'S OFFICE
AT BALTIMORE

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

DEPUTY

| | | | |
|---|---|---|---|
| *Zachary Stendig*<br>*Assistant United States Attorney*<br>*Zachary.Stendig@usdoj.gov* | *Mailing Address:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *Office Location:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *MAIN: 410-209-4800*<br>*FAX: 410-962-9293* |

March 15, 2019

Jose A. Molina, Esq.
608 Baltimore Ave
Towson, Maryland 21204

Thomas Egan, III, Esq.
621 Swede Street
Norristown, Pennsylvania 19401

> Re:   <u>United States v. David Diaz-Alvarado</u>
>         Criminal No. JKB-17-589

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, David Diaz-Alvarado (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by March 31, 2019, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense(s) of Conviction

1.    The Defendant agrees to plead guilty to Count Two of the Superseding Indictment now pending against him, which charges him with:  Murder in Aid of Racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2. The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense(s)

2.    The elements of the offense(s) to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

<u>As to Count Two:</u>   *occurring on or about March 11, 2016,*

That ~~beginning on a date unknown, but at least prior to in or about 2015, and~~ *e* ~~continuing through at least in or about 2017,~~ in the District of Maryland and elsewhere,

Rev. August 2018

(1)     The criminal enterprise set out in the Superseding Indictment, *La Mara Salvatrucha* ("MS-13"), existed;

(2)     The enterprise engaged in, or its activities in some way affected, interstate or foreign commerce;

(3)     The enterprise engaged in "racketeering activity" as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1);

(4)     The Defendant knowingly committed murder, or aided and abetted another's commission of murder, which crime violated state law; and

(5)     The Defendant committed the murder for the purpose of gaining entrance to or maintaining or increasing position in, or aiding and abetting another's entrance to or maintaining or increasing another's position in, the charged enterprise.

### Penalties

3.     The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------|----------------|--------------------|--------------|--------------------|
| Count 2 | 18 U.S.C. §§ 1959(a)(1) | Life Imprisonment | Life Imprisonment or death[1] | Not more than 5 years | $250,000 | $100 |

a.     Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.     Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.     Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. Including an amount equal to the cost of necessary funeral and related services.

---

[1] The United States has filed a notice to not seek the death penalty against the Defendant for Count Two. Accordingly, life imprisonment is the statutory maximum penalty.

Rev. August 2018

d.      Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e.      Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.      Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

Rev. August 2018

d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

a.      This Office and the Defendant further agree that the applicable base offense level is 43 pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 2A1.1 and 2E1.3 to account for a premeditated killing.

b.      The Defendant understands that his offense of conviction, 18 U.S.C. § 1959(a)(1), requires a statutory mandatory minimum term of life imprisonment. Accordingly, absent relief from the statutory minimum sentence, the Defendant's minimum sentence as to Count Two would be life imprisonment, pursuant to U.S.S.G. § 5G1.1(b).

c.      This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

Obligations of the Parties

9.      At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the

Rev. August 2018

conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

10.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

i.      The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

ii.     This Office reserves the right to appeal any sentence below a statutory minimum.

c.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

11.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

12.     The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

Rev. August 2018

13.     The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

14.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

Defendant's Conduct Prior to Sentencing and Breach

15.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

16.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

Court Not a Party

17.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to

Rev. August 2018

impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

18.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

Zachary Stendig
Assistant United States Attorney

Matthew K. Hoff
DOJ Trial Attorney

Samantha Mildenberg
Special Assistant United States Attorney

Rev. August 2018

8

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney in Spanish. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

5/2/2019
Date

_____
David Diaz-Alvarado

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement, with the Defendant in Spanish. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

5/2/2019
Date

_____
Jose A. Molina, Esquire

5/2/19
Date

_____
Thomas Egan, III, Esquire

Rev. August 2018

## **ATTACHMENT A**

## **STIPULATION OF FACTS**

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

*La Mara Salvatrucha*, also known as MS-13 ("MS-13"), is a gang composed primarily of immigrants or descendants of immigrants from El Salvador and other Central American countries, with members operating in the State of Maryland, including Anne Arundel County, Montgomery County, and Prince George's County, and throughout the United States. In the United States, MS-13 has been functioning since at least the 1980s. MS-13 originated in Los Angeles, California, where MS-13 members banded together for protection against the larger Mexican gangs. MS-13 evolved into a gang that engaged in turf wars for the control of drug distribution locations. MS-13 quickly spread to states across the country, including Maryland. MS-13 is a national and international criminal organization and is one of the largest street gangs in the United States. Gang members actively recruit members, including juveniles, from communities with a large Central American population.

At all relevant times, members of MS-13 from time to time signify their membership by wearing tattoos reading "MARA SALVATRUCHA," "MS," "MS-13," or similar tattoos, often written in gothic lettering. Members also signify their membership through tattoos of devil horns in various places on their bodies. Members sometimes avoid conspicuous MS-13 tattoos with discreet ones such as "503," spider webs, three dots in a triangle formation signifying "vida loca," or clown faces with phrases such as "laugh now, cry later." In recent years, some MS-13 members choose not to have tattoos at all, or to have them placed on areas such as the hairline where they can be easily covered, in order to conceal their gang affiliation from law enforcement.

The gang colors of MS-13 are blue, black and white, and members often wear clothing, particularly sports jerseys, with the number "13" or with numbers that, when added together, total 13, such as "76." MS-13 members also wear blue and white clothing to represent their membership, including blue and white shoes such as Nike "Cortez." As with tattoos, some MS-13 members select more discreet ways of dressing in order to signify their membership and at the same time avoid detection by law enforcement. MS-13 members refer to one another by their gang names, or monikers, and often do not know fellow gang members except by their gang names.

At all relevant times, members of MS-13 are expected to protect the name, reputation, and status of the gang from rival gang members and other persons. MS-13 members require that all individuals show respect and deference to the gang and its membership. To protect the gang and to enhance its reputation, MS-13 members are expected to use any means necessary to force respect from those who showed disrespect, including acts of intimidation and violence.

At all relevant times, members and associates of MS-13 frequently engage in criminal activity, including, but not limited to, murder, assault, kidnapping, robbery, extortion, obstruction

Rev. August 2018

of justice, and threatening, intimidating and retaliating against witnesses, drug trafficking, as well as attempts and conspiracies to commit such offenses.  MS-13 members are required to commit acts of violence both to maintain membership and discipline within the gang and against rival gangs.  Participation in criminal activity by a member, particularly violent acts directed at rival gangs or as directed by the gang leadership, increase the respect accorded to that member, resulting in that member maintaining or increasing his position in the gang, and opening the door to a promotion to a leadership position.  One of the principal rules of MS-13 is that its members must attack and kill rivals whenever possible.  Rivals are often referred to as "chavalas."  MS-13, in the area of Anne Arundel County, Prince George's County, and Montgomery County, Maryland, maintain rivalries with the 18th Street Gang, among others.

At all relevant times, prospective members who join MS-13 are required to complete an initiation process.  Individuals who associate with and are friends of the gang are called "paisas."  Individuals who do favors and other acts for the gang are called "paros."  Persons being observed by the gang for potential membership are known as "observations."  Individuals who advance to the final level before being "jumped in" are called "chequeos," or "cheqs."[2]  Chequeos undergo a probationary period during which they are required to commit crimes on behalf of MS-13 to achieve trust and prove their loyalty to the gang.   To join MS-13 and become a full member or "homeboy," prospective members are required to complete an initiation process, often referred to as being "jumped in" or "beat in" to the gang.  During that initiation, other members of MS-13 beat the new member, usually until a gang member finishes counting aloud to the number thirteen, representing the "13" in MS-13.

MS-13 is an international criminal organization, and is organized in Maryland and elsewhere into "cliques," that is, smaller groups operating in a specific city or region.  Cliques operate under the umbrella rules of MS-13.  MS-13 cliques often work together cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement.  In Maryland and the surrounding area, these cliques include Hempstead Locos Salvatruchas ("HLS"), Fulton Locos Salvatruchas ("FLS"), Sailors Locotes Salvatrucha Westside ("SLSW"), Hollywood Locos Salvatruchas ("HLS"), Parkview Locotes Salvatrucha ("PVLS"), Normandie Locotes Salvatruchas ("NLS"), Coronados Locos Salvatruchas ("CLS"), Weedons Locotes Salvatrucha ("WLS"), Peajes Locotes Salvatrucha ("PLS"), and Langley Park Salvatruchas ("LPS").

MS-13, including its leadership, members and associates, constitute an "enterprise" as defined in Section 1959(b)(2) of Title 18, United States Code, that is, a group of individuals associated in fact that engage in, and the activities of which affect, interstate and foreign commerce.  The enterprise constitutes an ongoing organization whose members function as a continuing unit for the common purpose of achieving the objectives of the enterprise.  The purposes of the enterprise include the following:

1.     Preserving and protecting the power, territory, and profits of the enterprise through the use of intimidation, violence, including assaults and murder, and threats of violence;

---

[2]     The terms "MS-13 associate" or "associate of MS-13" are used broadly in this Statement of Facts and include persons known as paisas, paros, observations, and chequeos.  In addition, the names of the titles for levels or ranks of involvement are constantly changing within MS-13.

2.      Promoting and enhancing the enterprise and its members' and associates' activities;

3.      Keeping victims and potential victims in fear of the enterprise and in fear of its members and associates, through violence and threats of violence;

4.      Providing financial support and information to gang members, including those who were incarcerated for committing acts of violence or other offenses; and

5.      Providing assistance to other gang members who committed crimes for and on behalf of the gang in order to hinder, obstruct, and prevent law enforcement officers from identifying the offender, apprehending the offender, and trying and punishing the offender.

From on or about March 11, 2016, the Defendant, **David Diaz-Alvarado**, was a member/associate of the MS-13 gang.

From on or about March 11, 2016, **Diaz-Alvarado** knowingly and intentionally conspired with other members and associates of MS-13, including Marlon Cruz-Flores, Fermin Gomez-Jimenez, Juan Carlos Sandoval-Rodriguez, and others, to murder Victim-1. On or about that date, **Diaz-Alvarado** and others planned and agreed to murder Victim-1, who the gang suspected of being a rival gang member. Sandoval-Rodriguez and another MS-13 member/associate lured Victim-1 to Quiet Waters Park in Annapolis, Maryland, with the intention of killing him once Victim-1 arrived. Prior to Victim-1 arriving at the park, **Diaz-Alvarado** loaned another MS-13 member, known and identified by **Diaz-Alvarado,** a knife, which **Diaz-Alvarado** knew would be used to stab and kill Victim-1. Once Victim-1 arrived at the park, members of the gang struck Victim-1 in the head with a branch or stick and the members and associates of MS-13 proceeded to stab the Victim-1 repeatedly, killing Victim-1. While members of the gang stabbed Victim-1, **Diaz-Alvarado** and another MS-13 member/associate stood watch outside of the park to ensure no one entered or left the park, and to watch for police presence, so that the gang could complete the murder of Victim-1. During this time, **Diaz-Alvarado** communicated by phone and through text messages with MS-13 members and associates inside the park, who murdered Victim-1, to let the others know no one entered the park and they could complete the murder.

After Victim-1 was killed, **Diaz-Alvarado** and the other MS-13 members and associates involved in the murder buried Victim-1 in a shallow grave inside the park. **Diaz-Alvarado** then called an MS-13 leader on the phone and informed the leader that the gang completed the murder of Victim-1.

The murder of Victim-1 was intended to maintain and increase the position of **Diaz-Alvarado**, or to aid and abet the other co-conspirators to maintain and increase their positions, in the MS-13 enterprise.

SO STIPULATED:

Zachary Stendig
Assistant United States Attorney

Matthew K. Hoff
DOJ Trial Attorney

Samantha Mildenberg
Special Assistant United States Attorney

David Diaz-Alvarado
Defendant

Jose A. Molina, Esquire
Counsel for Defendant

Thomas Egan, III, Esquire
Counsel for Defendant

Rev. August 2018