IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. JKB-17-0589 |
| | * | |
| MOISES ALEXIS REYES-CANALES, | * | |
| | * | |
| Defendant. | * | |
| | * | |

*******

<u>UNITED STATES' RESPONSE IN OPPOSITION
TO DEFENDANT'S PRETRIAL MOTION TO DISMISS</u>

The United States of America, through its attorneys, Robert K. Hur, United States Attorney for the District of Maryland, and Zachary Stendig, Assistant United States Attorney, and David L. Jaffe, Chief of the Department of Justice Organized Crime and Gang Section, and Matthew K. Hoff and Samantha M. Loiero, Trial Attorneys, respectfully submit this Response in Opposition to Defendant Moises Alexis Reyes-Canales's pre-trial motion to dismiss Count Two of the Second Superseding Indictment (ECF 310) and states as follows:

**I.      INTRODUCTION AND PROCEDURAL BACKGROUND**

The Defendant seeks to dismiss Count Two of the Second Superseding Indictment, which charges the Defendant with conspiracy to commit murder in aid of racketeering ("VICAR murder") for the March 11, 2016 murder of Victim-1, and to preclude reference to the murder at trial. In support of his motion, the Defendant raises three arguments, all of which have been squarely rejected by the Fourth Circuit: (1) that Count Two violates his Fifth Amendment right to Due Process because he was a juvenile at the time the offense was committed (ECF 310 at 3); (2) that Count Two violates his Eighth Amendment right to be free from cruel and unusual punishment, *id.*; and (3) "[t]o the extent that the Juvenile Justice and Delinquency Prevention Act, 18 U.S.C. §§ 5031-5040, ("JDA") authorizes the automatic filing of adult criminal charges against

1

[the defendant] for an act of delinquency, merely because circumstances delayed his indictment until after his twenty-first birthday, the JDA is unconstitutional, both on its face and as applied" to the Defendant. *Id.* The Defendant's arguments are foreclosed by *United States v. Lopez*, 860 F.3d 201 (4th Cir. 2017), and this Court must therefore deny the Defendant's motion in its entirety.

On November 2, 2017, a federal grand jury for the District of Maryland returned an Indictment charging the Defendant, who was then 19 years old, with attempted VICAR murder, in violation of 18 U.S.C. § 1959(a)(5) (Count One); use and carry a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Two); and conspiracy to commit VICAR murder, in violation of 18 U.S.C. § 1959(a)(5) (Count Three). On March 29, 2018, a federal grand jury returned a Superseding Indictment charging the Defendant, who was then 20 years old, with RICO conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One); attempted VICAR murder, in violation of 18 U.S.C. § 1959(a)(5) (Count Four); conspiracy to commit VICAR murder, in violation of 18 U.S.C. § 1959(a)(5) (Count Five); use and carry a firearm during an in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Six); attempted VICAR murder, in violation of 18 U.S.C. § 1959(a)(5) (Count Seven); use and carry a firearm during an in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Eight); and conspiracy to possess a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(o) (Count Nine). The Superseding Indictment also charged three other co-defendants with the same offenses. However, four co-defendants were also charged with VICAR murder, in violation of 18 U.S.C. § 1959(a)(1) (Count Two), and conspiracy to commit VICAR murder, in violation of 18 U.S.C. § 1959(a)(5) (Count Three), for the March 11, 2016 murder of Victim-1.

Charges related to the murder of Victim-1 were not part of the original Indictment and at the time of the Superseding Indictment, the Defendant was not charged with Counts Two and

Three because the murder of Victim-1 occurred approximately nine days before the Defendant's 18th birthday and he was only 20 years old at the time of the Superseding Indictment. Thus, at the time of the original indictment and the Superseding Indictment, the Defendant was charged only with crimes he had committed *after* his 18th birthday. Trial on the charges alleged in the Superseding Indictment was scheduled for October 7, 2019. Prior to trial, the Government indicated its intent to introduce evidence of the Defendant's pre-majority conduct, specifically his participation in the March 11, 2016 murder of Victim-1, as proof of underlying racketeering activity as permitted by *United States v. Spoone*, 741 F.2d 680 (4th Cir. 1984). The Government first made that intention clear at a scheduling conference held on May 1, 2018. (ECF 82).

The Defendant's initial motion to sever his case from his co-defendants' did not cite the introduction of evidence of his participation in the murder of Victim-1 as a basis for severance. (ECF 136). At the time, the Defendant merely adopted his co-defendants' severance arguments. However, the Government did assert in its opposition to the Defendant's motion to sever that it intended to introduce evidence of the Defendant's participation in the murder of Victim-1 pursuant to *Spoone*. (ECF 161 at 40-41). Thus, the Defendant and the Court were aware of the Government's intention to introduce this evidence as early as May 1, 2018 and surely as late as July 3, 2019 when, at the conclusion of a two-day motions hearing, the Court denied all motions to sever. (ECF 183).

On October 1, 2019, the Government filed a Status Report affirming its intent to introduce evidence of the Defendant's pre-majority conduct in participating in the March 11, 2016 murder of Victim-1 pursuant to *Spoone*. (ECF 235). The Court, *sua sponte*, raised concerns about a joint trial of the Defendant and his co-defendant Juan Carlos Sandoval-Rodriguez. (ECF 236). Thereafter, on October 2, 2019, the Defendant again moved to sever his case from Sandoval-

Rodriguez's. (ECF 241). The Court heard argument on the Defendant's motion to sever on October 4, 2019, and granted the Defendant's motion. (ECF 243). The Court filed a written decision on October 7, 2019. (ECF 246). In that decision, the Court noted, "as the case stands, Reyes-Canales is not and cannot be charged in federal court for the murder of Victim 1" and cited to *United States v. Under Seal*, 819 F.3d 715, 718 (4th Cir. 2016). (ECF 246 at 4-5). Among other reasons, the Court explained that the admission of evidence like that of the murder of Victim-1 under *Spoone* is permitted but not required in every case. *Id.* at 6. The Court further explained that evidence of "other crimes under Rule 404(b) is subject to the general limitations imposed by Rule 403" and "[t]he danger of unfair prejudice in this situation cannot be overstated." *Id.* at 7. The Court further determined that the risk of juror confusion would be too high if evidence of the pre-majority conduct was admitted only to establish the racketeering activities of MS-13. *Id.* at 8. The Court allowed the Government to choose which case to proceed with first. The Government elected to try Sandoval-Rodriguez first. On October 31, 2019, a jury convicted Sandoval-Rodriguez of VICAR murder and conspiracy to commit VICAR murder for his participation in the murder of Victim-1.

On December 10, 2019, after the Court granted the Defendant's motion to sever and after the trial of Sandoval-Rodriguez, a federal grand jury returned a Second Superseding Indictment (ECF 299) charging the Defendant with RICO conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One); conspiracy to commit VICAR murder, in violation of 18 U.S.C. § 1959(a)(5) (Count Two); attempted VICAR murder, in violation of 18 U.S.C. § 1959(a)(5) (Counts Three and Six); conspiracy to commit VICAR murder, in violation of 18 U.S.C. § 1959(a)(5) (Count Four); use and carry a firearm during an in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)

(Counts Five and Seven); and conspiracy to possess a firearm in furtherance of crime of violence, in violation of 18 U.S.C. § 924(o) (Count Eight).

The Second Superseding Indictment added a new Count Two, which charged the Defendant with conspiracy to commit VICAR murder for his participation in the March 11, 2016 murder of Victim-1. On February 11, 2020, the Defendant filed the instant motion to dismiss Count Two, claiming that the addition of Count Two in the Second Superseding Indictment violates the Defendant's Fifth Amendment Due Process rights and the Defendant's Eighth Amendment right to be free from cruel and unusual punishment. (ECF 310 at 3). Further, the Defendant asserts that the delay in charging the Defendant for Count Two "was through no fault of his and was a result of decisions made by the government in this case." *Id*. at 4.

## II.   DISMISSAL OF COUNT TWO IS NOT WARRANTED

### A. Background

The Defendant was born on March 20, 1998. On March 11, 2016, the Defendant, who was nine days shy of his 18th birthday, participated in the murder of Victim-1. Approximately six months after he turned 18 years old, the Defendant participated in the attempted murders of Victim-2 and Victim-3 during which Victim-2 was stabbed multiple times and almost run over by a car and Victim-3 was stabbed and shot multiple times. At the time of the Second Superseding Indictment, the Defendant was 21 years old.

### B. The Defendant Is Properly Charged As An Adult In Count Two Of The Second Superseding Indictment

Section 5031 of the JDA defines a juvenile as "a person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday." The JDA thus removes juveniles from the adult criminal justice system and provides a separate system of juvenile

treatment.  *See United States v. Juvenile*, 347 F.3d 778, 785 (9th Cir. 2003).  That system imposes specific preconditions both for proceedings within the JDA and for transfer of a juvenile for adult prosecution.  *See* 18 U.S.C. § 5032 (a juvenile "shall not be proceeded against in any court of the United States unless" certain conditions are met).

Accordingly, the key question here is whether the Defendant met the definition of a juvenile under § 5031 at the time he was indicted on Count Two.  The answer, plainly, is "no."  *See Lopez*, 860 F.3d at 209.  Indeed, the Defendant's argument that the JDA's protections "are related to the accused's age at the time of the offense, not at the time of indictment" (ECF 310 at 6) is irreconcilable with Fourth Circuit precedent and the great weight of authority.

The Fourth Circuit has held that a defendant who is twenty-one years of age or older when he is indicted is not a juvenile under the JDA because the defendant "was neither a person who has not attained his eighteenth birthday nor a person who has not attained his twenty-first birthday at any time during the proceedings."  *Lopez*, 860 F.3d at 209 (citing *United States v. Blake*, 571 F.3d 331, 344 (4th Cir. 2009) (internal quotation marks omitted)).  In reaching this conclusion, the Fourth Circuit squarely rejected the Defendant's assertion that the JDA is concerned with the age of the offender at the time of the offense: "To conclude otherwise, [the Fourth Circuit reasoned] we would have to read 'a person who has not attained his eighteenth birthday' in § [5031] to mean a person who *had* not attained his eighteenth birthday *at the time he allegedly violated the law in question*.  That simply is not what the statute says." *Id.* (emphasis in original).  Accordingly, the Government properly initiated proceedings against the Defendant as he is now over the age of twenty-one.

**C.  The Defendant's Fifth Amendment Due Process Rights Are Not Violated**

The Defendant asserts that, since he allegedly committed the murder of Victim-1 before his 18th birthday, he has a Fifth Amendment right to a transfer hearing under the JDA, regardless of his current age. (ECF 310 at 7). Again, the Defendant's argument fails under established Fourth Circuit precedent and the JDA.

In *Lopez*, the appellant made the same argument as the Defendant, namely, that "§ 5031 unconstitutionally deprive[d] him of a hearing on whether he may be tried as an adult." *Id.*, 860 F.3d at 210. In support of his argument, the Defendant (and Mr. Lopez) relied on *Kent v. United States*, 383 U.S. 541 (1966), and *Kemplen v. Maryland*, 428 F.2d 169 (4th Cir. 1970). In *Kent*, the Supreme Court interpreted a District of Columbia juvenile statute and held "that a juvenile was entitled to have counsel and other procedural safeguards at a waiver of jurisdiction hearing," which was "'required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel.'" *Kemplen*, 428 F.2d at 172 (quoting *Kent*, 383 U.S. at 557). These cases highlight "the necessity that the basic requirements of due process and fairness" should be satisfied during certain juvenile proceedings. *In re Gault*, 387 U.S. 1, 12 (1967) (internal quotation marks omitted). *Kemplen* involved a 17 year old, who was arrested and subjected to a Maryland State statute that allowed the State to proceed against him as an adult. 428 F.2d at 170. The appellant was not afforded an attorney at the time of his transfer hearing – which occurred the day after his arrest, when he was still 17 years old – from juvenile court to adult court. *Id.* The Fourth Circuit held that the defendant in *Kemplen* had a due process right to an attorney and representation at the transfer hearing. *Id.* at 178.

The *Lopez* court rejected the argument that Mr. Lopez, who was over 21 years old when charged in federal court, was entitled to a transfer hearing, holding *Kent* and *Kemplen* apply only to a defendant who "was classified as a 'juvenile,' [and] subject to the jurisdiction of a juvenile

7

system." *Lopez*, 860 F.3d at 211. Here, the Defendant was never entitled to the protection of the JDA, as the first indictment was returned *after* his 18th birthday. Moreover, as a matter of law, the Government could not have charged and transferred the Defendant for the conspiracy to commit VICAR murder under the JDA, because the JDA limits transfer to a narrow list of enumerated offenses or "crimes of violence." 18 U.S.C. § 5032. VICAR murder is not an enumerated crime, and conspiracy is not a crime of violence after *Sessions v. Dimaya,* 138 S. Ct. 1204 (2018).

Indeed, the Fourth Circuit has also noted, "juvenile court proceedings that affect a young person's substantial rights must measure up to the essentials of due process and fair treatment." *Kemplen*, 428 F.2d at 173 (internal quotation marks omitted). However, nothing in *Kent* or *Kemplen* implies that an individual is denied due process by *not* being classified as a juvenile. To be sure, the Defendant has never been classified as a juvenile under the JDA and has not been involved in any juvenile proceedings in connection with any of the indictments, and the Defendant reached the age of twenty-one before he was indicted for conspiracy to commit VICAR murder. Moreover, "[t]he instant case, in contrast [to *Kent*], involves not a judicial determination but instead the timing of a decision to prosecute." *United States v. Hoo*, 825 F.2d 667, 670 (2d Cir. 1987).

In a similar case, the Ninth Circuit held that an automatic adult-transfer provision in § 5032 did not violate a defendant's due process rights because "[i]n establishing the juvenile criminal offender system, Congress was empowered to determine to which juveniles the system would apply." *United States v. Juvenile*, 228 F.3d 987, 990 (9th Cir. 2000). Moreover, "[t]here is no constitutional right to be tried as a juvenile, nor does the Constitution require that juvenile proceedings be by indictment or jury trial." *Id.* Similarly, the JDA's definition of juvenile does

not violate the Defendant's due process rights simply because he believes certain policy reasons support him being treated as a juvenile under the JDA. As the Ninth Circuit reasoned, Congress has the discretion to decide which individuals are included in the juvenile system. *See id.* There is no authority for this Court to conclude that this Defendant, who was 21 years old when charged in the Second Superseding Indictment, has a substantive or procedural due process right to be defined as a juvenile for purposes of the JDA.

The Defendant's claim that he was arbitrarily deprived of his Constitutional protections because of "chance circumstances beyond his control" (ECF 310 at 9) does not alter the analysis. To begin, some of these circumstances were, in fact, within his control. The Defendant twice requested severance of his case from his co-defendants, and this Court granted the second request. (ECF 130, 241).[1] Delay is an inevitable by-product of severance, and the Defendant offers no support for his argument that he should be allowed to dictate the order of co-defendant trials. Moreover, the Government had intended to introduce the evidence under *Spoone*, and, it was not until this Court excluded that evidence, that charging the Defendant for this crime was contemplated or necessary to adjudicate the murder of Victim-1.

In any event, the Fourth Circuit in *Lopez*, 860 F.3d at 211, rejected the delay argument, while explaining their agreement with the Second Circuit's decision in *Hoo*, 825 F.2d 667. In *Hoo*, the Second Circuit declined to extend the protections of the JDA "to defendants who could have been prosecuted earlier but, through no fault of their own, are indicted after their twenty-first birthdays." 825 F.2d at 670. In *Lopez*, the Fourth Circuit explained, "the defendant in *Hoo*, who

---

[1] On October 18, 2019, the Defendant filed a Motion in Limine to preclude evidence of his involvement in the murder of Victim-1. (ECF 255). The Government believes this motion is now moot after the addition of Count Two in the Second Superseding Indictment and the Defendant's instant motion to dismiss.

committed an offense as a juvenile but was charged only after he turned 21, argued that the prosecutor's decision regarding the timing of his indictment should be subject to a hearing akin to the transfer hearing required by *Kent*." 860 F.3d at 211. In rejecting this argument, the Fourth Circuit adopted the Second Circuit's position in *Hoo* and held, "[g]iven prosecutors' broad discretion in the bringing of charges…due process cannot be understood to require that decisions to prosecute be subjected to pre-indictment judicial inquiry simply because the timing of the decision affects the availability of juvenile procedures." *Id*. at 211 (internal quotations omitted) (quoting *Hoo*, 825 F.2d at 670). Additionally, "a prosecutor's determination as to when to charge a case 'has been rarely subject to judicial review.'" *Id*. (citing *Hoo*, 825 F.2d at 670).

The Fourth Circuit explicitly rejected the Defendant's next argument, *i.e.*, he cannot be prosecuted as an adult because "juveniles are less blameworthy than adults because their brains are not yet fully developed, and they lack the capacity to make adult judgments." (ECF at 5)*; see Lopez*, 860 F.3d at 210. The Fourth Circuit held that "the JDA is not concerned exclusively, or even primarily, with the moral culpability of offenders at the time of their crimes"; rather, the intended purpose is when the offender is brought into the process because juveniles are "presumptively capable of rehabilitation, that is, that they are made subject to the JDA and its underlying rehabilitative philosophy." *Id.* at 209-10 (internal quotations omitted) (citing *United States v. Juvenile Male*, 554 F.3d 456, 459 (4th Cir. 2009)). In this case, the Defendant would not benefit from the rehabilitative nature of the juvenile system because he has been charged after attaining the age of 21. Therefore, the Defendant is properly charged as an adult for his pre-majority conduct.

   D. **The Defendant's Eight Amendment Rights Are Not Violated**

Finally, the Defendant asserts that proceeding to trial on Count Two and admitting evidence of the March 11, 2016 murder subjects him to cruel and unusual punishment. This argument is without merit and premature. The Eighth Amendment protects against "cruel and unusual punishment." U.S. Const. amend VIII. "Punishment is deemed cruel and unusual not only when it is 'inherently barbaric,' but also when it is disproportionate to the crime for which it is imposed." *United States v. Cobler*, 748 F.3d 570, 575 (4th Cir. 2014). The Defendant does not argue that his exposure to the maximum penalty of ten years' incarceration if convicted of Count Two is "inherently barbaric." Instead, relying on *Miller v. Alabama*, 567 U.S. 460 (2012) (statute at issue subjected a juvenile defendant to a sentence of life without parole), and *Graham v. Florida*, 560 U.S. 48 (2010), he argues that the conduct was committed before he was eighteen, and charging him as an adult rather than a juvenile makes him subject to a harsher sentence in violation of his Eighth Amendment right to be free from cruel and unusual punishment. (ECF 310 at 9).

As an initial matter, the Defendant has not been convicted of any offenses. Indeed, his trial is scheduled to commence on April 13, 2020. Accordingly, his Eight Amendment argument as to Count Two is surely premature. In any event, the Defendant cannot be sentenced to a mandatory life sentence for conspiracy to commit VICAR murder because the maximum penalty is ten years' incarceration.[2]

Furthermore, with regard to juveniles, the Supreme Court has articulated its Eighth Amendment jurisprudence in two recent cases cited by the Defendant, neither of which applies here. *See In re Vassell*, 751 F.3d 267, 269-70 (4th Cir. 2014) (describing *Graham* and *Miller*).

---

[2] In fact, recognizing the Supreme Court's decision in *Miller* and the Fourth Circuit's decision in *United States v. Under Seal*, 819 F.3d 715 (4th Cir. 2016), the Government recognizes that the Defendant could not be charged with VICAR Murder and thus, the Defendant is not subjected to the mandatory sentence of life imprisonment that a conviction for that offense would impose.

11

First, in *Graham*, "the Court held that juveniles who committed *nonhomicide* offenses may not be sentenced to life without parole." *Id.* (citing *Graham*, 560 U.S. at 74-75). In *Miller*, the Court "held that a juvenile who committed homicide cannot be sentenced to a *mandatory* life-without-parole sentence." *Id.* (citing *Miller*, 567 U.S. at 477). The Defendant argues that these cases recognize the difference in culpability between youth and adult offenders for purposes of the Eighth Amendment. However, the very definition of "juvenile" under the JDA does not remark on punishment, and does not apply in this case. Neither § 5031, nor any other part of the JDA, prevent the Court at a possible future sentencing from considering the Defendant's age at the time he committed the crime and giving it whatever weight the Court deems appropriate. *See Lopez*, 860 F.3d at 211. However, given that the Defendant has not been classified as a juvenile at any point in time during the pendency of this case, is alleged to have committed a homicide offense, and is not subject to a life sentence — mandatory or otherwise — if convicted of Count Two, *Graham* and *Miller* are inapposite.

To be sure, the Defendant's prosecution under Count Two is not prohibited by *Under Seal*, 819 F.3d 715. In *Under Seal*, the Fourth Circuit held that prosecution of a juvenile for VICAR murder was unconstitutional following the Supreme Court's decision in *Miller* because the only authorized penalties for VICAR murder are death or mandatory life imprisonment. *Under Seal*, 819 F.3d at 728. In this case, however, the Defendant has not been charged with VICAR murder and the maximum penalty for the offense with which he has been charged–*conspiracy* to commit VICAR murder—is ten years of imprisonment, not mandatory life imprisonment or death. Accordingly, *Under Seal* is inapplicable to the Defendant and he is properly charged in Count Two.

    **E. Evidence Of The Defendant's Participation In The Murder Of Victim-1 Is Relevant And Admissible To Several Counts In The Second Superseding Indictment**

Though not explicitly raised in the Defendant's motion to dismiss, evidence of the Defendant's participation in the March 11, 2016 murder of Victim-1 is relevant to several counts in the Second Superseding Indictment in addition to Count Two. In the Second Superseding Indictment, unlike the prior indictments, the Grand Jury returned an accusatory instrument that included a substantive charge against the Defendant for conspiracy to commit VICAR murder for the murder of Victim-1.  However, prior to the filing of the Second Superseding Indictment, the Government intended to offer evidence of the Defendant's participation in the March 11, 2016 murder as evidence showing the existence of the MS-13 enterprise, its manner and means, and the Defendant's knowledge of the MS-13 enterprise and its illicit objects, as well as to put the Defendant's post-majority acts – his attempts to murder two innocent men – in context for Count One (RICO conspiracy), which is permissible pursuant to *Spoone*, 741 F.2d at 687.

In contrast, evidence of the Defendant's involvement in the murder of Victim-1 is direct evidence of his guilt as to Count Two of the Second Superseding Indictment and is required to prove the Defendant's guilt as to that count.  In fact, the necessary evidence of the Defendant's involvement in the conspiracy to murder Victim-1 is not Rule 404(b) evidence because the Defendant faces a substantive charge for conspiracy to commit VICAR murder.  *United States v. Sutherland*, 921 F.3d 421 (4th Cir. 2019) (holding that FRE 404(b), which prohibits the admission of other bad acts evidence, does not affect the admission of evidence that is intrinsic to the alleged crime); *see also United States v. Otuya*, 720 F.3d 183, 188 (4th Cir. 2013) (same).  While the admission of this evidence would still need to pass an FRE 403 balancing test, the fact that evidence is prejudicial or harmful to a defendant's case is not a basis for exclusion so long as the evidence is relevant and probative.  *See e.g.*, *United States v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998); *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008) ("[A]ll evidence suggesting

guilt is prejudicial to a defendant … that kind of general prejudice, however, is not enough to warrant exclusion of otherwise relevant, admissible evidence."); *cf. United States v. Bradley*, 145 F.3d 889, 893 (7th Cir. 1998) ("To the extent that the defendant perceives Rule 403 as a tool designed 'to permit the Court to "even out" the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none,' he is mistaken."). Evidence is subject to exclusion under Rule 403 only where it is *unfairly* prejudicial—that is, only where the evidence is of such a character that it results in "an undue tendency to suggest decision on an improper basis." Fed. R. Evid. 403, Advisory Committee Notes to 1972 Amendments; *see also United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997) ("[T]he evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the fact finding process.").

Additionally, the evidence of Victim-1's murder is also intrinsic and relevant to Counts Three and Six of the Second Superseding Indictment because the Government is required to establish the existence of a racketeering enterprise, MS-13, at the time of the attempted murder of other individuals. In fact, even if the Court dismissed Count Two, which it should not under prevailing Fourth Circuit jurisprudence, evidence of the Defendant's involvement in the murder of Victim-1 and subsequent activities after he turned 18 would still be admissible as intrinsic racketeering enterprise evidence in a trial as to Counts One, Three, and Six.

In the alternative, even if the Court dismissed Count Two, the evidence of Victim-1's murder would also be admissible as to numerous counts as FRE 404(b) evidence.[3] Federal Rule of Evidence 404(b) provides that evidence of "other crimes, wrongs, or acts" is not admissible to

---

[3] To be clear, the Government does not concede that Rule 404(b) applies to this evidence, which would be direct evidence in the RICO Conspiracy and other charged VICAR counts.

prove a defendant's character or propensity to commit a crime, but is admissible for any valid purpose, including to prove motive, intent, plan, knowledge, modus operandi, and/or lack of mistake. *See United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009) (quoting Fed. R. Evid. 404(b)). Rule 404(b) is a rule of inclusion, "admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." *United States v. Young*, 248 F.3d 260, 271–72 (4th Cir. 2001) (citation omitted). For extrinsic evidence to be admissible under Rule 404(b), the proffered evidence must be (i) "relevant to an issue other than character," *e.g.*, knowledge, intent, modus operandi, or absence of mistake, *United States v. Siegel*, 536 F.3d 306, 317–18 (4th Cir. 2008) (citation omitted); (ii) "necessary to prove an element of the crime charged," or to prove context, *Queen*, 132 F.3d at 995, 998; and (iii) reliable. *Id*. at 995. In addition, "the probative value of the evidence must not be substantially outweighed by its prejudicial effect," which "involves a Rule 403 determination." *United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010).

All relevant evidence is admissible, except as provided by the Constitution, by act of Congress, by the Federal Rules of Evidence, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Fed. R. Evid. 402. Evidence is relevant if it tends to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "The more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes." *Queen*, 132 F.3d at 997.

In this case, the proffered FRE 404(b) evidence, specifically the murder of Victim-1, is relevant to valid issues, including the Defendant's knowledge and intent with regard to the Defendant and his co-conspirators stabbing Victim-2 and Victim-3, as charged in Counts One, Three, and Six. The evidence demonstrates the Defendant's knowledge of the MS-13 enterprise's

15

racketeering activities, specifically murder and attempted murder. The evidence also demonstrates the Defendant's intent with regard to the attempted murders of Victim-2 and Victim-3, to earn another promotion within the gang after the murder of Victim-1. All of this evidence meets the low legal threshold of relevance. *See* Fed. R. Evid. 401; *United States v. Rawle*, 845 F.2d 1244, 1247 n.3 (4th Cir. 1988) (evidence is relevant if it is "sufficiently related to the charged offense").

The evidence of Victim-1's murder is also necessary, as required by FRE 404(b). Evidence is necessary "where it is an essential part of the crimes on trial, or where it furnishes part of the context of the crime." *See, e.g.*, *United States v. Byers*, 649 F.3d 197, 209 (4th Cir. 2011); *see also United States v. Mark*, 943 F.2d 444, 448 (4th Cir. 1991). Here, in order to prove the Defendant's guilt under 18 U.S.C. § 1962(d), the government must establish, beyond a reasonable doubt, that the Defendant knowingly agreed a conspirator would commit at least two acts of racketeering. By pleading not guilty in this case, the Defendant has placed his knowledge and participation in the racketeering enterprise in dispute. *See*, *e.g.*, *United States v. Sanchez*, 118 F.3d 192, 196 (4th Cir. 1997) ("[a] not-guilty plea puts one's intent at issue and thereby makes relevant evidence of similar prior crimes when that evidence proves criminal intent."); *United States v. Robinson*, 13 Fed. Appx. 193, 194 (4th Cir. 2001) (unpublished) ("Robinson's not guilty plea placed his intent to conspire to steal and possess firearms and ammunition at issue …"). Thus, rather than being admitted for a collateral purpose, the proffered 404(b) evidence that the Defendant conspired to murder Victim-1 is necessary—indeed, critical—to proving the defendant's knowing agreement that a conspirator would conduct or participate in the affairs of the enterprise (including murder) at issue in this case. *See Huddleston v. United States*, 485 U.S. 681, 685 (1988) ("Extrinsic acts evidence may be critical … especially when th[e] issue involved the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.").

Next, the evidence of the Victim-1's murder is reliable. Evidence is reliable if it has a sufficient factual basis that it could conceivably be credited by, "a rational and properly instructed juror." *United States v. Bailey*, 990 F.2d 119, 123 (4th Cir. 1993). This requirement is not particularly onerous; indeed, it may be satisfied solely by the uncorroborated testimony of a cooperating witness. *See, e.g.*, *United States v. Hadaway*, 681 F.2d 214, 218–19 (4th Cir. 1982). In this case, the evidence of Victim-1's murder is highly credible. In fact, the jury in co-defendant Sandoval-Rodriguez's case found the evidence so credible that it found him guilty beyond a reasonable doubt. In this case, the Government seeks to offer that same highly credible evidence of Victim-1's murder, which involves the Defendant's role in planning and participating in the murder.

Finally, the proffered FRE 404(b) evidence would not create undue prejudice. As discussed above, simply because evidence is prejudicial does not mean that it would create *undue* prejudice. The evidence will not suggest decision on an improper basis. Rather, the evidence will be offered for a limited and legitimate purpose: to show the Defendant's knowledge and intent with regard to his participation in the MS-13 racketeering conspiracy. Further, to address any danger of unfair prejudice, the Court may give an extensive limiting instruction, informing the jury that it may only consider the proffered evidence for appropriate purposes. The Fourth Circuit has expressed great confidence in the efficacy of such instructions. *See*, *e.g.*, *United States v. Mohr*, 318 F.3d 613, 620 (4th Cir. 2003) ("[A] careful limiting instruction significantly ameliorated any possible unfair prejudice."); *United States v. Powers*, 59 F.3d 1460, 1468–69 (4th Cir. 1995) (noting that cautionary or limiting instructions generally obviate prejudice).

In conclusion, even if the Court dismissed Count Two, which it should not, the evidence of Victim 1's murder would still be admissible pursuant to FRE 404(b).

### III. CONCLUSION

For the forgoing reasons, the United States respectfully requests that the Court deny the Defendant's Motion to Dismiss Count Two of the Second Superseding Indictment and to Preclude Reference to the Defendant's Participation in the March 11, 2016 Murder of Victim-1 at trial.

                              Respectfully submitted,

                              Robert K. Hur
                              United States Attorney

                              David L. Jaffe
                              Chief, Organized Crime and Gang Section

By:              /s/
                              Zachary Stendig
                              Assistant United States Attorney
                              36 South Charles St., 4th Floor
                              Baltimore, Maryland 21201
                              Tel.: (410) 209-4800


                              /s/
                              Matthew K. Hoff
                              Samantha M. Loiero
                              Trial Attorneys
                              Organized Crime and Gang Section
                              U.S. Department of Justice
                              1301 New York Avenue, NW
                              Suite 700
                              Washington, D.C. 20005
                              Tel.: (202) 598-8093